U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2011 SEP 19 PM 2:09

CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| PERLEY G. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:10-cv-212 |
| ) | |
| MICHAEL J. ASTRUE, COMMISSIONER, ) | |
| SOCIAL SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE
AND DENYING DEFENDANT'S MOTION TO AFFIRM**
(Docs. 9, 16)

Plaintiff Perley G. Williams is a claimant for Social Security Disability Insurance benefits ("SSDI") and Supplemental Social Security Income ("SSI"). He brings this action pursuant to 42 U.S.C. § 405(g) to reverse the Social Security Commissioner's decision that he is not disabled, and to remand for a calculation of benefits, or, in the alternative, for rehearing and a new decision. Mr. Williams filed his motion to reverse (Doc. 9) on February 22, 2011, and the Commissioner filed his motion to affirm on May 4, 2011 (Doc. 16). Mr. Williams is represented by Raymond J. Kelly, Esq., and the Commissioner is represented by AUSA Michael P. Drescher.

For the reasons set forth below, Mr. Williams's motion is GRANTED and the Commissioner's motion is DENIED.

**I.     Background.**

Mr. Williams is forty-eight-years-old, 5'11" in height, and approximately 260 pounds in weight. He suffers from pain and swelling caused by deep venous thrombosis ("DVT") in his left leg. He is a high school graduate with a history of working unskilled jobs, including road construction flagger, assistant operator at a printing press, general

laborer, overnight maintenance worker at a large retail store, and store helper at a plumbing and heating supply store.

During the relevant time period, Mr. Williams's primary care physician was Stephen Genereaux, M.D. at Little Rivers Health Care Center. There, Mr. Williams was seen and treated primarily by Physician's Assistant Angela Welch. On February 4, 2008, Mr. Williams went to Little Rivers complaining of pain in his left calf that had persisted over the prior four days. Following an ultrasound, a radiologist determined that Mr. Williams had a DVT present in his left leg "that extends from the mid femoral artery to the popliteal as far as able to be visualized for the popliteal." (Administrative Record "AR" 237.) Mr. Williams was advised not to return to work until further evaluation.

Although Mr. Williams has experienced periods of decreased pain and increased activity, his DVT has interfered with his ability to work. For example, while working as an assistant operator at a printing press in March 2008, Mr. Williams complained of worsening leg pain, and PA Welch observed significant swelling caused by the DVT. She instructed Mr. Williams to "go home today, put [your] foot up and keep it up today and tomorrow." (AR 241.) On May 5, 2008, Mr. Williams had a failed attempt at returning to work at the printing press (working only two hours before having to stop) because his lower left leg swelled and caused significant pain.

Despite the continued presence of the DVT, Mr. Williams's symptoms improved during the summer of 2008, and in September 2008 he reported that "he is able to stand for long amounts of time without any swelling or any significant problems" other than "an occasional pain in that [left] leg." (AR 245.) That month, he began a new job as an overnight maintenance worker at Wal-Mart. This job required him to be "on his feet for several hours at a time," (AR 246) and resulted in additional pain and swelling in his leg. During this time period, Mr. Williams also cleaned floors at Wal-Mart using an automated machine in a seated position, but this task likewise resulted in pain because he was unable to elevate his leg. After three or four days on the job, Mr. Williams could no longer perform his duties at Wal-Mart.

In January 2009, Mr. Williams complained of progressively worsening leg pain that persisted whether he was "standing, sitting, or trying to lay down with his leg up." (AR 270.) Upon exam, it was noted that his left calf area was "exquisitely tender," and he was provided with a prescription for Percocet to relieve pain. *Id.*

As to his current daily activities, Mr. Williams reported that he spends most of a typical day in a recliner with his foot elevated. When he gets uncomfortable, he gets up and walks around before returning to the recliner. He further stated that, because of the DVT in his leg, he can longer do household chores or yard work without the assistance of friends and family, and he cannot "hunt or fish very well anymore because [he] can't stand for a long time or walk long distances." (AR 150.) The limited extent of Mr. Williams's daily activity was corroborated by his wife in a letter to the Administrative Law Judge ("ALJ"). (AR 213.)

Additional evidence of Mr. Williams's functional capabilities includes a December 17, 2008 Residual Functional Capacity Assessment conducted by non-examining State agency physician Dr. Geoffrey Knisely, M.D., and a Functional Capacity Evaluation Report completed on January 11, 2010 by physical therapist David Minshall at Dartmouth-Hitchcock Medical Center. Dr. Knisely never personally examined Mr. Williams, and based his opinion upon a review of the medical record. His opinion was later adopted by Agency Examiner Dr. Leslie Abramson in February 2009. PT Minshall made his assessment following a battery of tests that he provided to Mr. Williams over the course of approximately five hours.

II.   **Procedural History.**

Mr. Williams filed his applications for SSDI and SSI on October 9, 2008, alleging disability as of February 4, 2008. These applications were denied upon initial review and then again upon reconsideration. Mr. Williams timely requested review by an ALJ, and ALJ Thomas Merrill held a hearing on February 16, 2010. Mr. Williams appeared at the hearing with a non-attorney representative and provided testimony. The ALJ also called a vocational expert to testify at the hearing. On March 19, 2010, the ALJ issued a written decision in which he found that Mr. Williams was not disabled. *See* AR 7-15. The

3

Decision Review Board ("DRB") then selected the ALJ's decision for review. When the DRB failed to act on Mr. Williams's claim within ninety days, the ALJ's decision became the final decision of the Commissioner. Mr. Williams's claim is now ripe for judicial review under 42 U.S.C. §§ 405(g) and 1383(c).

### III. The ALJ's Application of the Five-Step Sequential Evaluation Process.

In order to receive benefits, a claimant must be "disabled" on or before his or her "date last insured" under the Social Security Act. 42 U.S.C. § 423(a)(1)(A). To determine whether a claimant is "disabled," the regulations require application of a five step sequential evaluation process.[1] *Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004); 20 C.F.R. §§ 404.1520; 416.920. The answer to the inquiry at each step determines whether the next step's question must be answered. Step one asks whether the claimant has engaged in substantial gainful activity since the alleged onset date of disability. If not, step two asks whether the claimant has any "impairments" that are "severe." If one or more "severe impairments" are found, step three asks whether any of these impairments meet or equal one of the listed impairments found in Appendix I of 20 C.F.R. § 404.1599. If an impairment meets or equals a listed impairment then the claimant is deemed "disabled." If not, step four asks whether the claimant retains the Residual Functional Capacity ("RFC") to do his or her past relevant work. Finally, if the claimant is unable to do prior relevant work, step five asks whether the claimant is able to do any job available in significant numbers in the national economy. *Id.* Through the first four steps, the claimant bears the burden of proving disability. At step five, that burden shifts to the Commissioner to show that there is other work in the national economy that the claimant can perform. *See Zabala v. Astrue*, 595 F.3d 402, 407 (2d Cir. 2010). In satisfying this burden, the Commissioner need not provide additional evidence of the claimant's RFC. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

---

[1] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

In this case, the ALJ followed the sequential evaluation through the first four steps. After concluding that Mr. Williams has the severe impairment of "deep venous thrombosis without occlusion,"[2] the ALJ found that Mr. Williams retained the RFC to perform "light work," with the qualification that Mr. Williams "needs to avoid moderate exposure to hazards and cannot climb ladders, ropes and scaffolds." (AR 12.) "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing[.]" 20 C.F.R. § 404.1567(b). The ALJ specifically found that Mr. Williams "can stand up to six hours in the workday, and sit six hours in the workday[.]" (AR 12.) Based on this RFC determination, the ALJ concluded that Mr. Williams is capable of performing his past relevant work as a construction site flagger.

The ALJ also added that: "[i]t is to be noted that even if the claimant was limited to sedentary work he would not be disabled pursuant to Rule[s] 201.23-29 of Appendix 2, Subpart P, Regulations No. 4 [the Medical-Vocational Guidelines, or "GRIDS"] without regard to his favorable vocational factor of age as a younger individual." (AR 14.) Rules 201.23-29 of the GRIDS apply only to claimants ages eighteen to forty-four, and therefore it was error for the ALJ to apply them to Mr. Williams. This error was harmless, however, because Rule 201.21 provides that a forty-eight-year-old with a high school education and an unskilled work history is "not disabled" if he retains the ability to perform sedentary work. See 20 C.F.R. §§ 404.1565(a), 416.965(a).[3]

---

[2] The ALJ found that Mr. Williams's weight, hypertension, and reported neck and shoulder pain did not constitute severe impairments.

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like . . . small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

IV.     **Standard of Review.**

In reviewing the Commissioner's decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Even if a court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g). It is the Commissioner that resolves evidentiary conflicts and determines credibility issues, and the court may not substitute its own judgment for the Commissioner's. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Aponte v. Secretary of HHS*, 728 F.2d 588, 591 (2d Cir. 1984). However, if the "evidence has not been properly evaluated because of an erroneous view of the law . . . the determination of the [Commissioner] will not be upheld." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

V.      **Conclusions of Law and Analysis.**

Mr. Williams argues that the ALJ's decision must be reversed because it misapplies the relevant legal standards and is not supported by substantial evidence. In particular, he argues that (1) the ALJ's finding that Mr. Williams can perform light work is not supported by substantial evidence and is based upon a misapprehension of the record; (2) even assuming that the "light work" RFC determination is correct, the ALJ's finding that Mr. Williams can return to his work as a flagger is flawed because it is based upon an inaccurate recitation of the vocational expert's testimony; (3) the ALJ failed to properly assess the opinion of PT Minshall; (4) the ALJ discounted Mr. Williams's testimony without sufficient explanation; (5) the ALJ failed in his obligation to fully develop the record; and (6) the ALJ's finding that Mr. Williams can perform sedentary

work must be rejected because it is not supported by specific reasons in the ALJ's written decision.

The Commissioner concedes that the ALJ's RFC determination was in error because the record does not support the finding that Mr. Williams can stand for up to six hours in an eight-hour workday. Further, the Commissioner does not contend that Mr. Williams is capable of performing his previous work as a construction site flagger. Rather, the Commissioner argues that the ALJ's decision should be affirmed on the alternative basis that Mr. Williams retains the RFC to perform sedentary work, and that, based on that finding along with Mr. Williams's personal characteristics, the GRIDS compel a finding of "not disabled."

### A. Substantial Evidence Does Not Support the ALJ's Determination that Mr. Williams Can Perform His Prior Work as a Flagger.

Neither the ALJ's RFC determination, nor his conclusion that Mr. Williams can perform his prior work, are supported by substantial evidence. First, in finding that Mr. Williams retains the RFC to perform light work, the ALJ gave "controlling weight" to the opinion of Dr. Knisely, the non-treating State agency physician who reviewed Mr. Williams's medical records. As an initial matter, and as the Commissioner concedes, this was legal error because an ALJ may only assign "controlling weight" to the opinion of a treating source, not a reviewing physician. *See* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Simpson v. Astrue*, 2011 WL 2458105, at *5 (D. Vt. 2011) ("in disability determinations, the only opinions accorded controlling weight are those offered by a claimant's treating physician"). The ALJ further erred by inaccurately characterizing Dr. Knisely's report as stating that Mr. Williams "could perform light work as he could stand up to six hours in the workday." (AR 13.) To the contrary, Dr. Knisely opined that Mr. Williams could stand and walk for a total of only three to four hours in one eight hour workday, and only one hour at a time without taking a break. *See* AR 263, 266. Further, there is no evidence in the medical record that could reasonably support the conclusion

that Mr. Williams has the ability to stand and/or walk for six hours during a single eight hour period.[4]

Next, even assuming that Mr. Williams can perform light work, the record does not support the conclusion that he could return to his prior work as a construction site flagger. In finding otherwise, the ALJ gave "controlling weight" to the testimony of a vocational expert whom the ALJ characterized as opining that "with the above residual functional capacity [Mr. Williams] could return to work as a flagger." (AR 14.) The ALJ further noted that the vocational expert's "testimony is not contradicted by other evidence" in the record. *Id.* However, the vocational expert actually testified that working as a construction site flagger requires standing for a total of seven to eight hours in one eight hour workday, and is therefore inconsistent with the ALJ's more limited RFC determination. For these reasons, the Commissioner acknowledges that the court cannot affirm the ALJ's step-four finding that Mr. Williams can return to his prior work.

> **B.     The ALJ's Decision Cannot be Affirmed on the Basis of Mr. Williams's Ability to Perform Sedentary Work.**

The Commissioner argues that, notwithstanding the errors outlined above, the ALJ correctly concluded that Mr. Williams can perform sedentary work, and application of the GRIDS therefore compels a finding that Mr. Williams is "not disabled." The ALJ's decision cannot be affirmed on this alternative basis, however, because the ALJ did not properly assess Mr. Williams's credibility or PT Minshall's opinion, and did not support the "sedentary work" conclusion with specific reasons.

> *i.     The ALJ Erred in Assessing Mr. Williams's Credibility*

The ALJ found that Mr. Williams's "testimony as to his functional limitations and the need to constantly elevate [his] leg are [not] entitled to full credibility." (AR 14.) Mr. Williams contends that this conclusion is not supported by substantial evidence.

---

[4] To the extent that the ALJ interpreted the medical records himself to conclude that, despite Mr. Williams's impairments, he retains the ability to perform light work, courts have "question[ed] . . . ALJ[s] ability to assess claimant['s] physical capacity unaided even by an RFC assessment from a nonexamining doctor." *Rivera-Figueroa v. Sec'y of Health and Human Services*, 858, F.2d 48, 52 (1st Cir. 1988).

To evaluate the intensity and persistence of symptoms and the impact of those symptoms on the claimant's ability to work, an ALJ must make "a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects[.]" SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). In assessing credibility, the ALJ considers several enumerated factors, including: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain; precipitating and aggravating factors; the type, dosage, and effectiveness of any medications taken to alleviate pain; and any treatment provided to reduce pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(v). If the ALJ "decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the [c]ourt to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) (citations omitted). "Normally, [the court] give[s] an ALJ's credibility determinations special deference because the ALJ is in the best position to see and hear the witness. But it is nevertheless possible to upset a credibility finding if, after examining the ALJ's reasons for discrediting testimony, [his] . . . finding is patently wrong." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (internal citations omitted).

Here, the ALJ found that Mr. Williams's activities of daily living were inconsistent with his subjective complaints of debilitating pain in his left leg. The ALJ observed that Mr. Williams's daily activities included:

> taking the dog out, feeding the dog and the cat, picking up after the children, making a light lunch, watching news on TV, talking with his wife and watching TV with her, doing some house cleaning, doing laundry, doing household repairs and yard work with assistance from friends and family, going outside two or three times a day, shopping for light groceries every week or two, sitting and visiting with people once or twice a week, lifting 20 pounds and walking 100 yards.

(AR 12.) The ALJ also discredited Mr. Williams's claim that he believed himself to be disabled because Mr. Williams unsuccessfully "tried to return to work at the printing company and at a Wal-Mart store[.]" (AR 13.)

The ALJ's credibility analysis is flawed for two reasons. First, in recounting Mr. Williams's daily activities, the ALJ omitted material limitations that Mr. Williams reported in his testimony and function reports. For example, Mr. Williams reported that he picks up his children's belongings only "if [his] leg isn't hurting too bad," (AR 146), and that "usually after being on [his] feet either standing or walking for 45 minutes or so [he] will sit on the couch with [his] feet elevated to relieve pain and swelling." *Id.* Further, Mr. Williams reported that he "*used* to do all household repairs and yard work," but "now [he has] to rely on [his] friends and family for help." (AR 148) (emphasis supplied.) And when asked by the ALJ to describe his typical day, Mr. Williams testified that he does not do any chores, and that he "basically sit[s] in a recliner with [his] foot elevated and watch[es] TV, and when [he] get[s] uncomfortable, [he] get[s] up and move[s] around and then [he] get[s] back in the recliner and watch[es] some more TV." (AR 27.) "Because the ALJ's adverse credibility finding . . . was based on a misreading of the evidence, it did not comply with the ALJ's obligation to consider all the relevant medical and other evidence, and cannot stand." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks and citation omitted).

Second, Mr. Williams's activities do not provide substantial evidence to discount his credibility. Activities such as watching the news with his foot elevated, talking with his wife, making a light lunch, doing laundry, shopping occasionally, and walking 100 yards, are not inconsistent with Mr. Williams's claim of total disability.[5] The Second Circuit has recognized that "a claimant need not be an invalid to be found disabled," and the pertinent inquiry is whether the claimant engages in "activities for sustained periods comparable to those required to hold a sedentary job." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Here, Mr. Williams's daily activities cannot be used to undermine his credibility in the absence of substantial evidence that Mr. Williams engaged in activity comparable to the sedentary work-level for a sustained period of time. *See Carroll v.*

---

[5] The ALJ also relied on Mr. Williams's activities of picking up his children's belongings and performing household repairs. But as discussed above, this was error because Mr. Williams testified that he can no longer perform household repairs, and that he is unable to pick up after his children on a regular basis because of the pain in his leg.

*Sec'y of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983) (finding activities of reading, watching television, listening to the radio, and riding buses and subways, as not inconsistent with a disability determination). Finally, that Mr. Williams attempted to return to work but, "because of his impairments, failed," does not provide a sufficient basis "for concluding that his symptoms could not have precluded him from maintaining employment during the relevant time period." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1037 (9th Cir. 2007).

The ALJ's flawed credibility analysis independently requires remand because a reasonable administrative factfinder, analyzing Mr. Williams's credibility correctly, may come to a different conclusion. Therefore, the court cannot conclude that the error is harmless. *See generally Fitzgerald v. Astrue*, 2009 WL 4571762, at *9 (D. Vt. 2009); *cf. Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration").

### ii. The ALJ Did Not Properly Assess PT Minshall's Opinion

PT Minshall met with Mr. Williams for approximately five hours on January 11, 2010 to conduct a functional capacity evaluation. PT Minshall recommended that Mr. Williams gradually return to work, working four hours per day "and progressing from there as tolerated." (AR 295.) PT Minshall recommended a "sedentary level position" where Mr. Williams could be "mostly seated with ability to elevate [his] leg and flexibility to change positions as needed." *Id.* The Commissioner acknowledges that PT Minshall's evaluation is "not entirely" consistent with a sedentary-level RFC determination because PT Minshall concluded that, at the time of the evaluation, Mr. Williams was capable of working only four hours per day. (Doc. 16 at 9.) The ALJ rejected PT Minshall's opinion because (1) physical therapists are not "acceptable medical sources" who can opine on the nature of a claimant's impairments; and (2) the evaluation's results were only an "estimate of the claimant's capacity" because of Mr. Williams's "less than full effort" during testing. (AR 13.)

11

Neither of these explanations provides sufficient grounds on which to reject PT Minshall's opinion. The opinions of physical therapists, while not "acceptable medical sources" under the regulations, 20 C.F.R. § 404.1513(a), remain relevant as to the severity of impairments that are established by other medical evidence. 20 C.F.R. § 404.1513(d)(1); *see also* SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006) (explaining that opinions from "other sources," like therapists, "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other evidence in the file"). In evaluating a therapist's opinion, an ALJ must consider: (1) the examining relationship between the individual and the medical source; (2) the treatment relationship, including its length, nature, and frequency of evaluation; (3) the degree to which the medical source provides evidentiary support for his or her opinion; (4) how consistent the opinion is with the entire record; (5) whether the opinion is from a specialist; and (6) any other relevant factors, including the extent to which the medical source is familiar with other record information. *See* 30 C.F.R. § 404.1527(d)(2)(i)-(ii), (d)(3)-(d)(6).

In this case, there is no indication that the ALJ applied these factors to PT Minshall's opinion. Instead, the ALJ incorrectly explained that "[t]he only assessment of residual functional capacity contained in the record is that done by" Dr. Knisely, and gave that opinion "controlling weight" while rejecting PT Minshall's assessment outright. (AR 14.)

In addition, the ALJ ignored key parts of PT Minshall's evaluation in discrediting it as unreliable. While PT Minshall noted that "[Mr.] Williams had not reached his physical maximum during the evaluation," he further explained that Mr. Williams gave "mostly consistent effort during testing," and any inconsistencies, particularly during a grip test, may have been caused by intermittent numbness in Mr. Williams's hand. (AR 292.) PT Minshall also observed that Mr. Williams was "reliable in his pain reporting," and "mostly reliable in his disability reporting for sitting and standing tolerances." (AR 294.) Further, Mr. Williams's "subjective reports of pain matched his observable changes in body mechanics, posture and speed" during testing. (AR 293.) Ultimately, PT Minshall concluded that "the results of this evaluation give a reasonable estimate of

[Mr.] Williams'[s] current capacity to dependably sustain performance in the work place." (AR 292.) Accordingly, the conclusion that PT Minshall's evaluation is unreliable because "he believed the results did not reflect maximum capacity" and Mr. Williams gave "less than full effort," (AR 13), is not supported by substantial evidence.

In sum, because the ALJ's written decision did not assess PT Minshall's opinion according to the factors set forth in 20 C.F.R. § 404.1527(d), and because it reflects an inaccurate recitation of PT Minshall's evaluation, remand is warranted for reconsideration of PT Minshall's function assessment. *See Slocum v. Astrue*, 2011 WL 1792581, at *6-7 (D. Vt. May 10, 2011) (ordering remand for proper assessment of an opinion provided by an "other medical source" on the severity of the claimant's symptoms).

### iii. The ALJ Did Not Provide Sufficient Reasons for His Alternative Finding that Mr. Williams Can Perform Sedentary Work

Although the ALJ rested his decision on Mr. Williams's ability to perform light work and to return to his previous job as a flagger, the ALJ added, in a single sentence, that "even if" Mr. Williams were limited to sedentary work, application of the GRIDS would compel a finding of "not disabled." (AR 14.) The Commissioner contends that the ALJ's decision can be affirmed on this basis because there is substantial evidence in the record that Mr. Williams is capable of working at the sedentary level. Mr. Williams argues that affirmance on this basis would be inappropriate because it is unsupported by specific reasons in the ALJ's written decision.

"Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009); *see also Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (explaining that a reviewing court "may not accept . . . counsel's *post hoc* rationalizations for agency action.") (internal quotation marks omitted).

In this case, the ALJ provided no reasoning, apart from the concededly flawed analysis that Mr. Williams is capable of performing light work, to support the alternative sedentary work RFC determination. While it is true that, "[i]f someone can do light work, . . . he or she can also do sedentary work," 20 C.F.R. § 404.1567(b), the ALJ did not provide acceptable reasons to conclude that Mr. Williams can perform light work. Under such circumstances, the court must remand for further administrative proceedings, because the court cannot review the record in the first instance and supply its own rationale as to why Mr. Williams retains the RFC to perform sedentary work. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (ordering remand because "[o]n the basis of the ALJ's insufficient findings here, we cannot determine whether his conclusory statement that [the claimant] could carry out sedentary work is supported by substantial evidence."); *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 208 (W.D.N.Y. 2005) ("The ALJ's [RFC] assessment is insufficiently presented in his decision to permit the Court to carry out its review function.").

      iv.  *The Record Must Be Further Developed on Remand*

Mr. Williams argues that the ALJ committed reversible error by not satisfying his obligation to fully develop the evidentiary record. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."); 20 C.F.R. § 404.1512(d) ("Before [the SSA] make[s] a determination that you are not disabled, [it] will develop [the claimant's] complete medical history[.]"). In particular, Mr. Williams asks that the agency obtain a "medical source statement from either a treating or consultative physician."[6] (Doc. 9 at 10.) The Commissioner offers no response to this argument.

---

[6] "Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis. . . . Medical source statements are to be based on the medical sources' records and examination of the individual; i.e., their personal knowledge of the individual." SSR 96-5p, 1996 WL 374183, at *4 (July 2, 1996).

14

Because the court orders remand on independent and alternative grounds, it does not decide whether the ALJ's failure to request additional evidence constitutes reversible error. Nonetheless, the court agrees that re-adjudication of Mr. Williams's claim will benefit from consideration of a medical source statement. As it stands, the only assessments of Mr. Williams's RFC in the record are from a State agency physician who never examined Mr. Williams, and a physical therapist who is not considered an "acceptable medical source" under the regulations. *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Accordingly, on remand, the ALJ shall acquire a medical source statement from either Dr. Stephen Genereaux at Little Rivers Health Care Center, or some other acceptable medical source in accordance with 20 C.F.R. § 404.1513(a). *See Machia v. Astrue*, 670 F. Supp. 2d 326, 338 (D. Vt. 2009) (ordering ALJ to obtain medical source statements from the claimant's treating physicians, even though the absence of such evidence in the record was not an independent basis for remand).

## VI.   Rehearing and a New Administrative Decision is Required.

For the reasons set forth above, Mr. Williams's motion to reverse (Doc. 9) is GRANTED and the Commissioner's motion to affirm (Doc. 16) is DENIED. Mr. Williams asks the court to remand this matter solely for a calculation and award of benefits rather than a new decision. However, he concedes that the "record in this case is sparse and lacks direct medical evidence from either treating or examining physicians regarding Mr. Williams's potential ability to meet even the demands of sedentary work." (Doc. 17 at 3.) In cases where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision," remanding for a calculation of benefits may be appropriate. *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999). However, "[w]here there are gaps in the administrative record or the ALJ has applied an improper standard," it is appropriate for the court to order remand for a rehearing and further development of the evidence. *Id.* (internal quotation marks omitted).

In this case, after considering a more complete medical record and applying the correct legal standards, an ALJ may conclude that Mr. Williams retains the RFC to

perform sedentary work. In such event, an award of benefits would not be warranted. Because further consideration of the record is necessary to properly adjudicate Mr. Williams's claims, his claims for SSDI and SSI are hereby remanded to the Social Security Administration pursuant to "sentence four" of 42 U.S.C. § 405(g)[7] for further proceedings consistent with this Order.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 19th day of September, 2011.

Christina Reiss, Chief Judge
United States District Court

---

[7] Under sentence four of 42 U.S.C. § 405(g), the district court has the authority to reverse, modify, or affirm the decision of the Commissioner. This may include a remand of the case back to the Commissioner for further analysis and a new decision. *See generally Rosa v. Callahan,* 168 F.3d 72, 83 (2d Cir.1999). A sentence four remand is a final judgment. *See Melkonyan v. Sullivan,* 501 U.S. 89, 97–102 (1991); Fed. R. Civ. P. 58.

16